IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 22–cv–2434–MDB

N.A.J.,[1]

    Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,

    Defendant.

# ORDER

    Plaintiff N.A.J. ["Plaintiff"] brings this action under the Social Security Act, 42 U.S.C. 405(g) ["the Act"], seeking judicial review of a final decision by Defendant Kilolo Kijakazi, the Acting Commissioner of Social Security ["Commissioner"], denying her application for disability insurance benefits. (Doc. No. 1.) Plaintiff has filed an Opening Brief, the Commissioner has responded, and Plaintiff has replied. (["Opening Brief"], Doc. No. 10; ["Response"], Doc. No. 11; ["Reply"], Doc. No. 12.) The Commissioner has also filed the Administrative Record. (Social Security Administrative Record ["AR"], Doc. No. 8.) After reviewing the briefs, the administrative record, and the applicable case law, this Court **AFFIRMS** the Commissioner's decision.

---

[1] Pursuant to Local Rule, D.C.COLO.LAPR 5.2(b), Plaintiff N.A.J. is identified by her initials only.

## BACKGROUND[2]

Plaintiff applied for disability insurance benefits under Title II of the Act on February 18, 2020, alleging she became disabled on July 19, 2019. (AR 298, 300.) Plaintiff alleged she could not work due to the following conditions: schizoaffective disorder, multiple personality disorder, bipolar disorder, post-traumatic stress disorder ["PTSD"], depression, anxiety, borderline personality disorder, and attention deficit hyperactivity disorder ["ADHD"]. (*Id.* at 318.) Plaintiff has a high school education, and her employment history includes positions as a cashier checker, photographer, and department manager. (*Id.* at 70, 201.) The Commissioner denied Plaintiff's application on September 16, 2020, and again upon reconsideration on June 29, 2021. (*Id.* at 25.)

An administrative law judge ["ALJ"] subsequently conducted a hearing on March 31, 2022, and issued a written ruling on April 13, 2022, denying Plaintiff's disability claim. (*Id.* at 22, 265.) In making her determination, the ALJ followed the five steps of the sequential evaluation process,[3] finding that:

- *Step One*: Plaintiff had not engaged in substantial gainful activity since July 19, 2019, the application date. (*Id.* at 27.)

---

[2] The following background focuses only on the elements of Plaintiff's history relevant to the Court's analysis.

[3] The Social Security Administration ["SSA"] uses a five-step evaluation process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition that met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See id.*; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (describing steps in detail). The claimant has the burden of proof through step four; the SSA has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). At step five, the Commissioner must show that the claimant retains sufficient residual functional capacity ["RFC"] to perform work in the national economy, given her age, education, and work experience. *Id.*

- *Step Two*: Plaintiff had the following severe impairments: schizoaffective disorder, multiple personality disorder, bipolar disorder, PTSD, depression, anxiety, borderline personality disorder, dissociative identity disorder, ADHD, traumatic brain injury, diabetes, arthritis, history of left carpal tunnel release, left long finger trigger release, left rotator cuff repair, and left thumb fusion. (*Id.*)

- *Step Three*: Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments as governed by the regulations. (*Id.* at 28.) Then, in assessing Plaintiff's RFC, the ALJ determined that Plaintiff was capable of light work:

    [A]s defined in 20 CFR 404.1567(b) with lifting and carrying up to 20 pounds occasionally and 10 pounds frequently. She can stand and walk for about six hours and sit for about six hours in an eight-hour workday with normal breaks. She can push or pull with the left non-dominant upper extremity occasionally. She can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. Overhead reaching with the left upper extremity can be performed frequently. She can handle and finger frequently with the left non-dominant upper extremity. She can have occasional exposure to excessive noise and can generally perform at a moderate noise level. She can have occasional exposure to environmental irritants, such as fumes, odors, dusts, and gases. She can have no use of heavy, moving machinery and no exposure to unprotected heights. She can understand, remember, and carry out instructions that can be learned in up to and including 30 days of on the job training. She can keep pace sufficient to complete tasks and meet quotas typically found in unskilled work. She can have superficial interaction with the public and occasional interaction with coworkers and supervisors. She can adapt to occasional changes in the workplace. She may be off task up to 10% of the work period due to her impairments.

    (*Id.* at 30.)

- *Step Four*: Plaintiff was unable to perform her past relevant work. (*Id.* at 34.)

- *Step Five*: Considering Plaintiff's age, education, work experience, and RFC, she could successfully adjust to other work, including as a copy machine operator, mail sorter, and clerical checker. (*Id.* at 35.)

The SSA's Appeals Council denied Plaintiff's request for review of the ALJ's decision on July 25, 2022, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 2)

## LEGAL STANDARD

In Social Security appeals, the Court's review is limited to determining whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. *Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017); *see generally* 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted); *accord Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion.").

In making this determination, the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," but will "not reweigh the evidence or retry the case." *Flaherty*, 515 F.3d at 1070 (internal citation omitted). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). Nevertheless, "if the ALJ failed to apply the correct legal test, there is ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## ANALYSIS

Plaintiff's sole contention on appeal is that the ALJ erred by denying her disability insurance benefits application because substantial evidence does not support the RFC determination. (Doc. No. 10 at 2.) Specifically, Plaintiff argues the ALJ erroneously rejected the

4

opinion evidence of state agency medical and psychological consultants, Christine Cork, a physician's assistant-certified ["PA-C"], and Christian Ogden, a licensed professional counselor ["LPC"]. (*Id.* 13-17.) She also contends the ALJ erroneously found the medical opinions inconsistent with Plaintiff's discontinuation of treatment, and thus made the determination based on her "lay interpretation of the medical record." (*Id.* at 17, 19.) The Commissioner responds that after weighing all the evidence, the ALJ adequately evaluated Plaintiff's mental workplace limitations. (Doc. No. 11 at 6.) The Court addresses each contention in turn.

The RFC is the most a claimant can do in a work setting despite the claimant's mental and physical limitations. 20 C.F.R. §§ 404.1545(a)(1). When assessing a claimant's RFC, the ALJ must consider the objective medical evidence that may correlate with the symptoms and other available evidence, including the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; treatment, other than medication, received for relief of pain or other symptoms; any measure other than treatment used to relieve pain or other symptoms; and other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. Social Security Ruling (SSR) 16-3P, 2017 WL 5180304, at *7-8 (Oct. 25, 2017).

It is well-established that an ALJ has a duty to evaluate all medical source opinions in the record. *Vigil v. Colvin*, 805 F.3d 1199, 1201-02 (10th Cir. 2015). Under the SSA regulations,[4] the persuasiveness of a medical source's opinion is evaluated using five factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant (which

---

[4] For applications filed after March 27, 2017, the new Social Security regulations provide that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinions(s) or prior administrative finding(s)." 20 C.F.R. § 416.920c(a).

5

includes the length of treatment relationship, frequency of examinations; purpose and extent of treatment relationship, and examining relationship); (4) the medical source's area of specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

Supportability and consistency are the two most important factors in determining the persuasiveness of a medical opinion. *Collins v. Commissioner*, No. 20-cv-2542-NYW, 2022 WL 110469, at *8 (D. Colo. Jan. 12, 2022) (citing 20 C.F.R. § 416.920c(b)(2)). For supportability, the ALJ considers whether the medical source's opinions are supported by "objective medical evidence" and "supporting explanations." 20 C.F.R §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency, on the other hand, requires a comparison between the medical source opinion and "the evidence from other medical sources and nonmedical sources" in the record. *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ must explain her approach with respect to these two factors, however, she is not required to expound on the remaining three unless she finds that two or more non-identical medical opinions are equally well-supported and consistent with the record. *Id.* §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3).

In this case, the ALJ concluded—based on the medical record—that Plaintiff's impairments did not preclude all employment. (AR 31.) Although the ALJ noted that Plaintiff had individual therapy and psychiatric medication since the alleged onset date of the disability, (*id.*), Plaintiff could "function independently despite her impairments" and limited treatment. (*Id.*) Additionally, despite a lack of specialized neurological treatment, Plaintiff "routinely had normal findings on neurological exams." (*Id.*) The ALJ also noted that in April 2021, Plaintiff "reported she was off all psychotropic medications," "did not want to continue with mental health therapy," "denied manic or depressive symptoms," and "testified she has not been

6

hospitalized for psychiatric issues." (*Id.*) The ALJ acknowledged that part of the mental status examinations showed Plaintiff had auditory hallucinations, presented as "depressed, anxious, irritable, angry, sad, tearful, and dysphoric mood and affect" and with "fast speech," "poor eye contact," "mouth tics and squinty eyes." (*Id.*) But the examinations also showed that Plaintiff was "regularly observed to have normal mood, affect, behavior, judgment, and thought content." (*Id.*) In her testimony, Plaintiff also "denied suicidal ideation," "appeared happier and more stable with treatment," and "her thought content was not paranoid or delusional." (*Id.*) Also, while the examinations showed that Plaintiff was at times "distractible with short attention span," in other instances, she was "observed to have sufficient attention and adequate concentration." (*Id.*) The ALJ also discussed how Plaintiff could "perform her activities of daily living independently, including caring for her son." (*Id.*)

The ALJ then determined that the medical opinions and prior administrative medical findings were not entitled to controlling weight because they were inconsistent and unsupported by the evidence. (*Id.* at 33.) Specifically, she discussed and found unpersuasive the opinions of PA-C Cork, LPC Ogden, and the prior administrative medical findings of the state agency and psychological consultants. (*Id.* at 33-34) She found that PA-C Cork's opinion was internally inconsistent because Cork indicated both that "claimant would miss work more than four days per month," but "also indicated the claimant has no significant limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and no significant limitation in the ability to perform at a consistent pace without an unreasonable number and length of rest periods." (*Id.* at 33.) The ALJ also found that PA-C Cork's finding that "claimant has marked difficulties in concentration, persistence, or pace" was inconsistent with her statement that "claimant has only moderate limitations in specific areas of

7

sustained concentration and persistence." (*Id.* at 33-34) Additionally, the ALJ determined there was no evidence or support for the opinion that "claimant has had one to two episodes of decompensation or that she has lived in a highly supportive living arrangement." (*Id.* at 34.) This is because Plaintiff "denied psychiatric hospitalizations" and "reported that she lives alone with her teenage son." (*Id.*) PA-C Cork's opinion was also inconsistent with Plaintiff's "discontinuation of mental health treatment and her denial of manic or depressive symptoms." (*Id.*)

Similarly, the ALJ found the opinion of LPC Ogden to be unpersuasive, noting there was "no objective evidence in the treatment records establishing the severity of symptoms" as described by LPC Ogden and that his opinion was inconsistent with Plaintiff's "discontinuation of medications and treatment and her denial of manic or depressive symptoms." (*Id.*) Lastly, the ALJ found the prior administrative medical findings of the state agency and psychological consultants to be unpersuasive because the determination that Plaintiff's impairments were not severe was inconsistent with the medical evidence "which establishe[d] some limitations due to arthritis, diabetes, and a history of left upper extremity surgeries." (*Id.*)

The Court finds the ALJ's determination was appropriate and supported by substantial evidence. Contrary to Plaintiff's assertion, the ALJ did not reject all the medical opinions wholesale or "rejec[t] every relevant opinion of record." (Doc. No. 10 at 12.) Instead, the ALJ thoroughly detailed what portions of the opinions were unpersuasive due to internal inconsistencies as well as inconsistencies with the medical evidence, and a lack of evidentiary support. *See Collins*, 2022 WL 110469, at *8; *see also Castellano v. Sec'y of Health and Human Services*, 26 F.3d 1027, 1029 (10th Cir. 1994) (an ALJ may discount a medical opinion if it is inconsistent with other substantial evidence in the record).

8

Moreover, the ALJ properly considered and discussed supportability—determining that while the evidence partially supported the medical opinions and prior administrative medical findings—other parts were unsubstantiated. (*See generally* AR 30-34.) The ALJ also recounted Plaintiff's testimony that she performs daily living activities, including taking care of her son, managing her finances, shopping, and using public transportation. (*Id.* at 29.) The ALJ also looked at the medical records that indicated Plaintiff appeared happier, with thought content that was not paranoid or delusional, and with moods that were stabilizing with treatment. (*Id.* at 31.)

As to consistency, the ALJ stated that the medical opinions of PA-C Cork and LPC Ogden contained various contradictory statements relating to Plaintiff's ability to complete a workweek, concentrate, and persist. *Compare, e.g.,* (AR 640) (marking that Plaintiff would be absent from work "more than four days per month,") *with* (AR 197, 199) (finding only moderate limitation in "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" and "capable of work of limited capacity"). Likewise, the ALJ found inconsistencies between the finding that Plaintiff "has additional limitations in understanding, remembering, and applying information and in concentrating, persisting, or maintaining pace based on observations of distractibility, hyperactivity, and impaired remote memory," and the administrative medical findings that Plaintiff lacked certain limitations. (AR 33.) *See Zagorianakos v. Colvin*, 81 F. Supp. 3d 1036, 1044 (D. Colo. 2015) (lack of adequate consistency with other evidence of record is an appropriate consideration in weighing a source opinion).

Contrary to Plaintiff's argument, the ALJ did not have to explicitly state how each opinion and finding were consistent *and* inconsistent with the medical evidence. *See* 20 C.F.R.

§§ 404.1520c(c)(2), 416.920c(c)(2)). And this is not a situation where the ALJ discredited medical opinions based on the ALJ's "own credibility judgments, speculation, or lay opinion." *Jones v. Colvin*, 610 F. App'x 755, 758-59 (10th Cir. 2015) (citing *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002)). Here, the Court "can follow the adjudicator's reasoning … and can determine that correct legal standards have been applied[.]" *Keyes-Zachary*, 695 F.3d at 1166. It is sufficient that the ALJ thoroughly considered the medical record, Plaintiff's allegations, statements at the hearing, and medical opinions and findings. Ultimately, the ALJ did not ignore or deny Plaintiff's mental health diagnoses — she agreed that Plaintiff had several severe impairments. But she did not find them as debilitating as PA-C Cork and LPC Ogden found them. This is the type of determination the ALJ is empowered to make, and because it is supported by substantial evidence, the determination should not be disturbed, even if the Court or a different ALJ might have weighed the evidence differently. *See Flaherty*, 515 F.3d at 1070.

The ALJ also found PA-C Cork's and LPC Ogden's medical opinions inconsistent with Plaintiff's discontinuation of treatment, and the Court is not persuaded by Plaintiff's argument that this was error. (Doc. No. 10 at 17.) The ALJ specifically discussed the inconsistencies, noting Plaintiff's discontinuation of medication, mental health treatment, and denial of manic or depressive symptoms. (AR 34.) A different ALJ might have concluded that Plaintiff's treatment discontinuation does not make PA-C Cork's and LPC Ogden's medical opinions inconsistent. And such a conclusion might be reasonable. But the possibility of a reasonable person reaching a different conclusion is not grounds for reversal. *See Lax*, 489 F.3d at 1084 (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) ("'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.'")). Indeed, this Court may not "displace the agency's choice

10

between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.* (internal quotations and brackets omitted). Because the ALJ applied the correct legal standard and identified why the opinions were either unsubstantiated or inconsistent with the evidence, the Court finds no error in the ALJ's decision.

The Court concludes that the ALJ's RFC determination is supported by substantial evidence, and the ALJ, therefore, committed no error.

## CONCLUSION

For the reasons set forth above, the Commissioner's decision is **AFFIRMED.**

Dated September 25, 2023.

**BY THE COURT:**

_____

Maritza Dominguez Braswell
United States Magistrate Judge

11